*UP 2827*

# United States District Court Eastern District of New York

_____

03-CV-6045
(Garaufis, D.J.)

_____

BRUCE KING,

*Petitioner,*

*against*

WILLIAM E. PHILLIPS, Superintendent,
Green Haven Correctional Facility, et al.,

*Respondent.*

## AFFIDAVIT AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

RICHARD A. BROWN
District Attorney
Queens County
*Attorney for Respondent*
125-01 Queens Boulevard
Kew Gardens, New York  11415
(718) 286-5928

JOHN M. CASTELLANO
USHIR PANDIT
   Assistant District Attorneys
      *Of Counsel*

May 23, 2006

## TABLE OF CONTENTS

Page No.

AFFIDAVIT IN OPPOSITION TO PETITION FOR A WRIT
    OF HABEAS CORPUS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

FACTUAL AND LEGAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . .  2

        State Appellate History  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
        The Current Petition  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12


    POINT ONE

        PETITIONER'S  CLAIM  THAT  THE  PROSECUTOR
        IMPAIRED THE GRAND JURY PROCEEDINGS DOES NOT
        ALLEGE  A  VIOLATION  OF  THE  FEDERAL
        CONSTITUTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

            A.    Petitioner's Complaint That the Indictment
                  Was Improperly Obtained Fails to Present
                  a Federal Constitutional Issue . . . . . . . . . . . . . . . . . . . . . . .  14

            B.    Petitioner's   Due Process Claim is
                  Procedurally Barred From Review in this
                  Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

    POINT TWO

        THE  STATE  COURT'S  DETERMINATION  THAT  THE
        IDENTIFICATION  PROCEDURE  WAS  NOT  UNDULY
        SUGGESTIVE  WAS  NOT  CONTRARY  TO,  OR  AN
        UNREASONABLE  APPLICATION  OF,  WELL-SETTLED
        SUPREME COURT PRECEDENT  . . . . . . . . . . . . . . . . . . . . . . .  20

POINT THREE

PETITIONER'S CLAIM, THAT HIS RIGHT TO COUNSEL WAS VIOLATED, WHEN, AFTER AN ATTORNEY HAD BEEN ASSIGNED TO PETITIONER'S CASE, THE DETECTIVES QUESTIONED HIM ABOUT AN UNRELATED MATTER DOES NOT PRESENT A FEDERAL CONSTITUTIONAL QUESTION . . . . . . . . . . . . . . . . . . . . . . . . 29

A.    Petitioner's Complaint That His Right to Counsel Was Violated When The Police Questioned Him About A Matter Unrelated to the Case For Which He Had Been Arrested Fails to Present a Federal Constitutional Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

B.    Petitioner's Due Process Claim is Procedurally Barred From Review in this Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

POINT FOUR

THE STATE COURT'S REJECTION OF PETITIONER'S CLAIMS REGARDING THE TRIAL COURT'S EVIDENTIARY RULINGS IS NEITHER CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, WELL-SETTLED SUPREME COURT LAW. IN ANY EVENT, ANY ERROR IS HARMLESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

UNITED STATES DISTRICT COURT                                    UP 2827
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BRUCE KING,                                          :

                                  Petitioner,        :        AFFIDAVIT IN
                                                              OPPOSITION TO
        -against-                                    :        PETITION FOR
                                                              A WRIT OF
WILLIAM E. PHILLIPS, Superintendent of               :        HABEAS CORPUS
Green Haven Correctional Facility, et al.,           :

                                                              03-CV-6045 (NGG)


                                                     :
                                  Respondents.

--------------------------------------------------------------x


STATE OF NEW YORK   )
                    )        ss.
COUNTY OF QUEENS    )


        USHIR PANDIT, an Assistant District Attorney in the County of

Queens and an attorney admitted to practice law in this Court, being duly sworn,

deposes and states as follows:

        1.      I am submitting this affidavit and memorandum of law in

opposition to the September 15, 2003 application of petitioner Bruce King for a writ

of habeas corpus.  I make the statements in this affidavit on information and belief,

based upon my review of the records and files of the Queens County District

Attorney's Office.

        2.      By agreement with the Attorney General of the State of New

York, the District Attorney of Queens County will represent respondent in this matter.

## Factual and Legal Background

3.      On November 28, 1995, at approximately 8:00 p.m., petitioner and an accomplice entered the Continental Services office, where petitioner had formerly been employed, and held two employees at gunpoint, demanding that they tell him where the company money was kept, and threatening to kill them.[1]   The employees said that there was no company money, but one of the employees, Marie Gering, pled for her life, offering petitioner the money in her purse.   After stealing Gering's money, and ransacking the office, petitioner fired one shot, and then he and his accomplice fled.

4.      Although petitioner was wearing a ski mask during the robbery, Michael Thomas, one of the victims, who had worked with petitioner for several months during petitioner's employment at the company, recognized petitioner's voice, and was able to subsequently identify petitioner in a voice line-up.   On January 2, 1996, following the identification, petitioner was arrested and, after waiving his *Miranda* rights, he gave the police a written statement, admitting that he had participated in the robbery, but claiming that it was his cohort who had fired the gun.

---

[1]      On August 8, 1996, petitioner's accomplice, Carl Dade, plead guilty to two counts of Attempted Robbery in the First Degree, two counts of Attempted Robbery in the Second Degree, and Criminal Possession of a Weapon in the Third Degree.

5.     Subsequently, in March of 1996, petitioner, while in custody on this case, filed a complaint against Detective Kevin Meehan, alleging that he had given the detective information about an unrelated double homicide, and that the detective's failure to follow up on that information had resulted in a subsequent murder and robbery at a Second Avenue deli.   Petitioner's allegations against Detective Meehan were investigated by two detectives from the Internal Affairs Bureau ("I.A.B."), who met with petitioner on March 13, 1996.  During his discussion with the I.A.B. detectives, petitioner claimed that he had the gun that had been used in the murders, and agreed to arrange for the detectives to get the weapon.  To this end, in the detectives' presence, petitioner called his girlfriend and instructed her that a friend of his would come by, and that she should give him the gun.[2]

6.     Later that day, after the interview, the I.A.B. detectives went to defendant's girlfriend's house, and she handed them a bag containing a nine millimeter gun and a starter pistol.  Subsequent ballistics test revealed that the gun was not related to either of the homicides, and that petitioner's complaint against Detective Meehan was unfounded.  The case file was, therefore, closed.

---

[2]     Detective Meehan was the arresting officer in this case; however, the I.A.B. detectives were unaware of this fact.  Indeed, the I.A.B. detectives did not know the details of the robbery on which petitioner was in custody, did not speak to him about the robbery, and did not suspect that the gun petitioner told them about had anything to do with the robbery for which petitioner was being held.

7.     More than one year later, in April of 1997, Karen Lynch, the Assistant District Attorney ("A.D.A.") assigned to the instant case, while preparing for trial, learned that Detective Meehan had been interviewed by the I.A.B. in response to petitioner's complaint.  On April 9, 1997, A.D.A. Lynch contacted the I.A.B. detective that had been assigned to the case to see if there was any *Rosario* material in his file.  As they were discussing the case, the detective told her that a gun had been recovered from petitioner as a result of the I.A.B. investigation.  A.D.A. Lynch subpoenaed the file and the gun, and subsequent ballistics tests revealed that the bullet recovered from the wall of the Continental Services office had been fired from petitioner's gun.

8.     Petitioner was charged, under a theory of accomplice liability, with Robbery in the First Degree, Robbery in the Second Degree, two counts of Attempted Robbery in the First Degree, two counts of Attempted Robbery in the Second Degree, and Criminal Possession of a Weapon in the Third Degree (Queens County Indictment No. 3320/96).[3]

9.     Following his indictment, petitioner moved, in Supreme Court, Queens County, to suppress the pre-trial identification, the written statement that he had made to the police, and the bullet recovered during the investigation.

_____

[3]     The Criminal Possession of a Weapon charge was not submitted to the jury (Proceedings: 1045).

4

Additionally, petitioner moved to preclude the ballistics match and the statements that he had made to the I.A.B. detectives on the grounds that the People did not serve timely notice of their intention to use this evidence at trial pursuant to section 710.30 of the Criminal Procedure Law.  After holding a Dunaway/*Mapp*/*Huntley* hearing and a "good cause" hearing[4], the court denied petitioner's motions (Flaherty, J. at suppression hearing and Blumenfeld, J. at good cause hearing).

      10.      Thereafter, petitioner, *pro se*, proceeded to trial before the Honorable Robert McGann, Justice of the Supreme Court, Queens County, and a jury. The testimony at trial established that one of the victims of the robbery, Michael Thomas, who had worked closely with petitioner at Continental Services and knew him very well, recognized petitioner's voice during the robbery and subsequently identified petitioner's voice in a line-up.  Likewise, petitioner matched the physical description given by the other robbery victim, Marie Gering, in height, weight, skin tone, and build, and, according to Ms. Gering, his voice at trial sounded like that of the robber.  Moreover, petitioner's written confession, which was admitted into evidence at trial, contained many specific details of the crime, and even referred to one of the victims as "Mike," although the police had not divulged the victims' identities to petitioner before taking his statement.  Finally, the police testimony

---

[4]A hearing was held pursuant to section 710.30 of the New York Criminal Procedure Law for the People to establish good cause for their failure to serve a notice of petitioner's statement within fifteen days of petitioner's arraignment.

established that the bullet fired during the robbery, which was subsequently recovered from the wall of Continental Services, had been fired from the gun that petitioner had surrendered to I.A.B. detectives a few months after the crime; and, according to petitioner's own statements, the gun was in his possession at the time of the robbery.

11      In his defense, petitioner called one witness, Bernice Sutton, who testified that she was a close friend of petitioner's and that when she saw him on December 2, 1995, several days after the robbery, he was using crutches and wearing a removable brace around his leg.  But Ms. Sutton also read portions of petitioner's medical records into evidence, establishing that petitioner broke his ankle in June of 1995, and that by October 3, 1995, petitioner's ankle could support "full weight bearing."

12.     Petitioner also allegedly wished to call other witnesses at trial, but in spite of the trial Court's express admonitions on Thursday, June 25, 1998, that petitioner should have all of his witnesses available the following Monday, on Monday no other defense witnesses were available; and, in light of petitioner's pattern of being excessively disruptive, rude, and uncooperative, and engaging in numerous dilatory tactics throughout the trial, the court refused to grant petitioner any further adjournments.  Thus, the defense rested after Ms. Sutton's testimony.

13.     In his lengthy summation, petitioner argued that he had been set up, and claimed that the A.D.A., the witnesses, the judge, and all of the police and

ballistics experts were in on the conspiracy, and had lied to the jury.  At the conclusion of the trial, petitioner was convicted of Robbery in the First Degree (N.Y. Penal Law § 160.15[4]), Robbery in the Second Degree (N.Y. Penal Law § 160.10[1]), Attempted Robbery in the First Degree (N.Y. Penal Law §§ 110.00 / 160.15[4]), and Attempted Robbery in the Second Degree (N.Y. Penal Law §§ 110.00/160.10[1]).

14.    On August 11, 1998, petitioner was sentenced to concurrent indeterminate prison terms of from twelve and one-half to twenty-five years on the first-degree robbery conviction and seven and one-half to fifteen years on the second-degree robbery conviction, to run consecutive to concurrent indeterminate terms of from seven and one-half to fifteen years on the attempted first-degree robbery conviction, and three and one-half to seven years on the attempted second-degree robbery conviction.

**State Appellate History**

15.    On June 1, 2001,  petitioner filed a brief in the Supreme Court of the State of New York, Appellate Division, Second Department, in which he raised five claims.  First, petitioner argued that the integrity of the Grand Jury proceeding was impaired by the prosecutor's allegedly improper and prejudicial comments. Second, petitioner claimed that the hearing court erred in denying suppression of the voice identification because this line-up was not tape-recorded, and the identification

7

was unreliable.  Third, petitioner claimed that the police violated his right to counsel when detectives from the Internal Affairs Bureau interviewed him -- upon petitioner's request -- to investigate petitioner's allegations of police misconduct.  Fourth, petitioner argued that the court deprived him of his right to present a defense by refusing to grant petitioner's request for an adjournment when he was proceeding *pro se* and was not prepared to present his defense at the conclusion of the People's case. Fifth, petitioner asked the Appellate Division to remit his case for a settlement hearing because the court allegedly erred in *sua sponte* issuing an amended transcript of the sentencing proceedings, which reflected that petitioner had been sentenced to "consecutive" terms instead of "concurrent" terms of imprisonment.

16.    On July 31, 2001, the state filed a Respondent's Brief that addressed each of petitioner's contentions.  First, the state argued petitioner's claim regarding the prosecutor's conduct during the grand jury proceedings was meritless because the prosecutor's questions were all proper, and none of her comments were prejudicial.  Second, the state argued that the hearing court properly denied suppression of the voice identification because this confirmatory identification was reliable, and the police testimony regarding the procedures employed to ensure a fair line-up was more than sufficient to overcome any adverse inference that should be drawn from the failure to record the procedure.  Third, the state argued that petitioner's claim that his right to counsel had been violated was also  meritless

because no right to counsel attached under these circumstances as the detectives knew nothing about the underlying robbery for which petitioner was in custody, had no reason to believe that petitioner would incriminate himself in any way, and did not even suspect a connection between the gun volunteered by petitioner during the interview and the instant robbery until more than one year after the interview – and even then, the connection was established purely by chance. Fourth, the state argued that petitioner's claim that he was denied the right to present a defense was meritless and under the circumstances of this case – where petitioner had engaged in numerous dilatory tactics, was granted several adjournments, was disruptive, rude and insulting throughout the trial, and had been specifically instructed the prior week that he should be prepared to present his defense and to sum up on Monday – the court properly exercised its discretion in refusing to further delay the trial. Fifth, the state argued that a hearing was not necessary where the trial court issued an amended transcript of the sentencing proceedings because, placed in context, and in light of the commitment order, it is clear that the use of the word "concurrent" was a mistake, and the court acted well within its authority in correcting this simple typographical error without first conducting a hearing.

17. On February 4, 2002 the Appellate Division, Second Department affirmed the judgment of conviction. *People v. King*, 291 A.D.2d 413 (2d Dept. 2002). The court held that the prosecutor's cross-examination of petitioner in the

grand jury was within the limits of proper cross-examination and did not exceed permissible boundaries.  *People v. King*, 291 A.D.2d at 414.  The court also held that the failure to produce an audio tape of the voice identification procedure created a presumption of suggestiveness and that presumption was overcome by the testimony of the officer who oversaw the lineup.  The court further held that thereafter, petitioner had the burden to prove that the procedure was unduly suggestive and here, petitioner failed to meet his burden.  Finally, the court held that petitioner's remaining claims were without merit.  *Id.*

18.     Petitioner then sought leave to appeal his judgment of conviction to the New York Court of Appeals.  On June 24, 2002, petitioner's application to seek leave to appeal to the Court of Appeals was denied.  *People v. King*, 98 N.Y.2d 677 (2002).

### The Current Petition

19.     In his petition to this Court for a writ of *habeas corpus*, petitioner now raises all but the last claim that he raised in his brief to the state appellate court. Specifically, petitioner claims that he was deprived of the right to a fair trial because the prosecutor impaired the grand jury proceedings; the state court erred in not suppressing an unrecorded identification procedure; the state court erroneously failed to suppress a subsequent line-up identification procedure; the police improperly

questioned petitioner outside the presence of counsel, and petitioner was denied the opportunity to present a defense on his behalf.

20.     But, as explained in the accompanying Memorandum of Law, the petition should be denied because petitioner's claims either do not present a federal constitutional question cognizable on habeas review or they are all without merit.

21.     Petitioner is currently incarcerated on the conviction from which he is seeking habeas corpus relief.

22.     The state record in this case will be submitted upon request.

WHEREFORE, and for the reasons set forth in the accompanying Memorandum of Law, the petition for a writ of habeas corpus should be summarily denied.

_____
USHIR PANDIT (2827)
Assistant District Attorney
(718) 286-5928

Sworn to before me this
___ day of May, 2006.

_____
    Notary Public

To:    Bruce King, 96A6939
       Clinton Correctional Facility Annex
       P.O. Box 2002
       Dannemora, New York 12929

UNITED STATES DISTRICT COURT                           UP 2827
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BRUCE KING,                                            :

      Petitioner,            :

  -against-                                  :   M E M O R A N D U M
                  OF LAW
                                                       :
WILLIAM E. PHILLIPS, Superintendent of                 :
Green Haven Correctional Facility, et al.,             :
                                                       :   03-CV-6045(NGG)

      Respondents.           :
                                                       :
                                                       :
-----------------------------------------------------------------x

   This Memorandum of Law, together with the accompanying Affidavit,

is submitted in opposition to petitioner's *pro se* petition for a writ of habeas corpus.

It responds primarily to the issues raised therein.

12

## **POINT ONE**

### **PETITIONER'S CLAIM THAT THE PROSECUTOR IMPAIRED THE GRAND JURY PROCEEDINGS DOES NOT ALLEGE A VIOLATION OF THE FEDERAL CONSTITUTION (Answering Ground Five [1] of the Petition).**

The prosecutor's cross-examination of petitioner in the grand jury was proper based on petitioner's evasive and untruthful testimony, and her questions were, as a whole, neither improper nor prejudicial. The integrity of the grand jury, therefore, was not impaired. Petitioner claims, however, as he did in state court, that the prosecutor impaired the integrity of the grand jury proceedings when she became an unsworn witness against him. Preliminarily, petitioner's claim does not raise a question of federal law and should not, therefore, be reviewed by this Court. To the extent, however, that this Court finds that petitioner's claim presents a cognizable issue under the Due Process Clause, petitioner's claim should not be reviewed by this Court because the claim is procedurally barred from review. Petitioner failed to alert the state courts of the federal constitutional nature of his claim and he no longer has a forum in which to do so. Nor has he given this Court any reason to overlook his procedural default. Therefore, petitioner is not entitled to the writ.

13

**A.    Petitioner's Complaint That the Indictment Was Improperly
Obtained Fails to Present a Federal Constitutional Issue.**

In order to obtain a writ of habeas corpus, a petitioner must establish

that he is being held in violation of the constitution or laws of the United States. *See*

28 U.S.C. §§ 2241(c), 2254(a);  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Absent a federal violation, a federal court has no power to grant a writ of habeas

corpus.   Consequently, any claim that the state court erred as a matter of state law

does not present a federal question reviewable in a habeas corpus proceeding. *See*,

*e.g.*, *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  And because a claim of error under

state law is unreviewable in a federal habeas proceeding, a state-law claim cannot

provide a basis for arguing that prejudice would result if a procedural default is not

set aside.

Here, the claim that the prosecutor's conduct impaired the integrity of

grand jury presentment raises a question of state law only.  Courts have repeatedly

held that challenges to the sufficiency of a state indictment, or claims of prosecutorial

misconduct during the grand jury presentment, are generally not issues cognizable on

habeas review.  *See*, *e.g.*, *Lopez v. Riley*, 865 F.2d 30 (2d Cir. 1989) (claims of

insufficient evidence, a failure by prosecutors to develop exculpatory evidence,

presentation of prejudicial evidence and error in explaining the law to grand jury does

not state a claim cognizable on federal habeas corpus review); *Barber v. Garvin* 2000

U.S. Dist. Lexis 4978 (S.D.N.Y. Apr. 19, 2000) (petitioner's claim that there was

insufficient evidence before the state grand jury to indict is not cognizable on federal habeas corpus review).  This is because the Fifth Amendment guarantee of indictment by a Grand Jury is not applicable to the states.  *See*, *e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466 at 477, n.3 (2000).  Even if a state adopts a grand jury system, the constitutional requirements binding the federal government to certain procedures in criminal cases do not apply to the state proceedings.  *Alexander v. Louisana*, 405 U.S. 625, 633 (1972).  Thus, complaints about the sufficiency of, or misconduct in obtaining, an indictment are not subject to habeas review unless the indictment falls below basic constitutional standards.

An indictment may be found constitutionally defective if it inadequately informs the defendant of the charges he must meet, and fails to protect defendant from a future prosecution based on the same set of events.  *Russell v. United States*, 369 U.S. 749, 763-764 (1961); *see also United States v. Eric Mulder*, 273 F.3d 91 (2d Cir. 2001); *DeVonish v. Keane*, 19 F.3d 107, 108 (2d Dept. 1994) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992); *United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975); *Adorno v. Portuondo*, 2000 U.S. Dist. LEXIS 21978 (N.D.N.Y. August 30, 2000); *Carroll v. Hokes*, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir 1989)(no federal constitutional claim unless the indictment provides insufficient information to prepare a defense by failing to inform accused, "in general terms, of the time, place and essential elements of the alleged crime");

*Medina v. Herbert*, 1998 U.S. Dist. Lexis 18007.  And because petitioner fails to demonstrate that the indictment is constitutionally defective, he is not entitled to habeas relief as his claim relies solely on a perceived error of state law.

Here, petitioner raises only a state law claim.  His argument that the prosecutor impaired the integrity of the grand jury raises an issue cognizable under state law that raises no federal issue for this Court to review.  Indeed, under section 190.50(5)(b) of the New York Criminal Procedure Law, a defendant has the right "to testify before the grand jury" and once the defendant gives his initial statement, "he is subject to examination by the people."  N.Y.C.P.L. § 190.50 (5)(b).  Although the People are permitted to impeach a defendant's credibility, the prosecutor may not become an unsworn witness by imparting his personal opinion or by asking impermissible and inflammatory questions.  Conduct by the prosecutor that conveys his belief in defendant's guilt may impair the integrity of the grand jury.  *People v. Huston*, 88 N.Y.2d 400 (1996).  Under such extreme circumstances, a defendant may seek a dismissal of the indictment pursuant to section 210.35 (5) of the New York Criminal Procedure Law.  And here, in his state appellate brief, defendant argued that the indictment should be dismissed pursuant to section 210.35 (5) of the New York Criminal Procedure Law (*see* Petitioner's State Brief at 27).  Thus, because in this petition, petitioner relies on the arguments made in his state appellate brief, his current claim implicates state law only.

16

**B.     Petitioner's  Due  Process  Claim  is Procedurally Barred From Review in this Court**

Likewise, petitioner's unelaborated allegation that his right to a fair trial was violated because the prosecutor impaired the integrity of grand jury proceedings is not cognizable here because it was not exhausted in the state courts, and must now be deemed procedurally barred from review.  Here, on his direct appeal in state court, petitioner argued that the indictment should be dismissed pursuant to section 210.20 of New York Criminal Procedure Law and also relied upon Article I, section 6 of the New York State Constitution (Petitioner's State Brief at 27-8).  Therefore, his current constitutional claim was not fairly presented in that forum, and is thus unexhausted. *See* 28 U.S.C. § 2254(b) and (c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982).  However, as petitioner no longer has any procedure available to him in state court by which to raise his unexhausted claim, having already taken the one direct appeal to which he is entitled, this Court should "deem the claim to be exhausted" but procedurally barred from habeas review as a result of the petitioner's failure to have raised it properly in the state court.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

As his claim is procedurally barred, petitioner can obtain *habeas corpus* review of it only by establishing cause for his procedural default *and* resulting prejudice, or that a fundamental miscarriage of justice will occur if this Court does not review the claim.  Petitioner cannot do so here.  First, petitioner cannot establish cause

17

for his default.  The most commonly asserted ground for cause is that the petitioner's attorney was ineffective in failing to raise the defaulted issue in state court.  *See Murray v. Carrier*, 477 U.S. 478 (1986).  But a petitioner cannot rely on ineffective assistance of appellate or trial counsel as the basis for cause unless the petitioner has independently exhausted that claim in state court (*id*. at 489), and petitioner has not done so here.

Second, petitioner cannot establish prejudice.  Although the Supreme Court has not definitively defined what it means by "prejudice," it has suggested that prejudice is established by showing that, but for the default, there is a reasonable probability that the outcome of the relevant proceeding would have been different.  *See Stickler v. Greene*, 527 U.S. at 289-96; *see also Reed v. Ross*, 468 U.S. 1, 12 (1984) (prejudice exists where, but for the alleged error, the petitioner "might not have been convicted"); *United States v. Frady,* 456 U.S. 152, 170 (1982) (a petitioner must show not merely that the errors created a "*possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original).  Thus, a petitioner cannot establish prejudice when the defaulted constitutional claim is without merit.  *Cappiello v. Hoke*, 698 F. Supp. 1042 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988).  So, too, a petitioner cannot establish prejudice when the alleged constitutional claim really only presents an issue of state law, or presents an issue that is not otherwise

18

cognizable in a habeas corpus proceeding.  Here, petitioner's claim does not even implicate a constitutional right.  Thus, he cannot establish that he would be prejudiced by non-review of his claim.

Finally, petitioner cannot establish that this Court's failure to consider the claim would result in a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The Supreme Court has recognized that this exception will generally apply in a situation where the constitutional violation "probably has caused the conviction of one innocent of the crime."  *Schlup v. Delo*, 513 U.S. 298, 325 (1995); *see also Murray v. Carrier*, 477 U.S. at 495-96.  To meet this test, the petitioner must show that it is "more likely than not that no reasonable juror would have convicted" him if the constitutional error had not occurred.  *Schlup v. Delo*, 513 U.S. at 327-28.  In order for such a claim to be persuasive, a defendant must ordinarily rely on new evidence, not available to the jury. And the Supreme Court has further held, "'Actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).  Here, petitioner has adduced no new evidence before this Court and has not even attempted to demonstrate that he is innocent.  Accordingly, there is no basis to excuse petitioner's procedural default.

*        *        *

In sum, petitioner's claim that the prosecutor impaired the grand jury proceedings does not present a federal constitutional question cognizable on habeas review. Moreover, petitioner's unelaborated claim of a violation of his fair trial rights – first asserted in the petition before this Court – was not exhausted in state court and is now procedurally barred from review. Accordingly, the writ may not issue on the basis of this claim.

## POINT TWO

### THE STATE COURT'S DETERMINATION THAT THE IDENTIFICATION PROCEDURE WAS NOT UNDULY SUGGESTIVE WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, WELL-SETTLED SUPREME COURT PRECEDENT (Answering Ground Five [2 & 3] of the Petition).

The Appellate Division did not contravene or unreasonably apply established Supreme Court law, or misapply the law to the facts, when it ruled that the voice identification of defendant at a lineup by a witness to the robbery should not be suppressed. Petitioner nonetheless complains that because the police failed to record the voice identification procedure the identification was rendered suggestive. This issue was decided on the merits in state court and that decision must be afforded deference by this Court. Moreover, petitioner has not established that the state court's rejection of this claim was contrary to, or an unreasonable application of, well-settled federal law as established by the Supreme Court. Indeed, to the contrary, based on the

20

state's proof, the state court properly rejected petitioner's claim and he is, therefore, not entitled to habeas corpus relief.

First, petitioner filed his petition after the effective date of the AEDPA, and the petition is therefore governed by that Act.  Under the deferential standard of review contained in 28 U.S.C. §2254 (d) (1), if a state court "adjudicates" a petitioner's federal claim "on the merits" a federal court may not grant a writ of habeas corpus unless the state court decision is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  A federal claim is adjudicated "on the merits" in state court even if the state court does not explicitly refer to either the federal claim or relevant federal case law.  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).  Here, petitioner's claim was in fact decided "on the merits" by the New York State Appellate Division, Second Department.  In fact, the court held that the fact that the police did not record the voice identification procedure merely created a presumption of suggestiveness and that the presumption of suggestiveness was overcome by the testimony of the detective who oversaw the lineup. *People v. King*, 291 A.D.2d at 414.  Furthermore, the New York State Court of Appeals declined to disturb this ruling. *See People v. King*, 98 N.Y.2d 677.  Thus, because the state court adjudicated petitioner's federal claim "on the merits," the deferential standard of section 2254 (d) applies to petitioner's claim.

Accordingly, this Court may not grant a writ of habeas corpus petition unless the petitioner establishes that the state court's rejection of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the decision was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d) (1), (2); *Williams v. Taylor*, 529 U.S. 362 (2000). Here, petitioner has failed to establish either.

The Supreme Court has established a two-step inquiry for evaluating the constitutional admissibility of out-of-court identification procedures. *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994). First, the court must determine whether the pretrial identification procedure unduly and unnecessarily suggested that the defendant was the perpetrator. *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). If the procedure was not suggestive, the identification evidence presents no due process obstacle to admissibility, and no further inquiry is required. *Id*. If, however, the court finds that the procedure was unduly suggestive, it must determine whether the identification was nonetheless independently reliable. *Id*. These guidelines are also applicable when considering whether a pretrial voice lineup was unduly suggestive. *See Virgin Islands v. Sanes*, 57 F.3d 338 (3rd Cir. 1995); *United State v. Alvarez*, 860 F.2d 801, (7th Cir. 1988); *United States v. Schultz*, 698 F.2d 365 (8th Cir. 1983); *Brown v. Harris*, 666 F.2d 782 (2d Cir. 1981); *Newton v. Coombe*, 2000

22

LEXIS 21106 (S.D.N.Y. 2000); *United States v. Jones*, 652 F. Supp. 1561 (S.D.N.Y.

1986) (identifications made from "voice spreads" are subject to the same due process

challenges as any other identification procedure).

   In the instant case, the lineup that has been challenged by petitioner was

not impermissibly suggestive.  As an initial matter, a lineup is "unduly suggestive as

to a given defendant if he meets the description of the perpetrator previously given by

the witness, and the other lineup participants obviously do not." *Raheem v. Kelly*, 257

F.3d at 134; *United States v. Wong*, 40 F.3d at 1359-60.  The Court, however, should

be "mindful of the edict that a single, unique physical trait is, in the main, an

insufficient basis for a finding of suggestivity." *United States v. Marshall*, 807 F.

Supp. 5, 8 (D.D.C., 1992), *cert. denied*, 511 U.S. 1058, 114 S. Ct. 1624 (1994),

quoting *United States v. Jackson*, 509 F.2d 499, 505 (D.C. Cir. 1974).  Put another

way, disparate physical appearances of the lineup participants is not alone sufficient

to warrant a finding of suggestiveness. *United States v. Marshall* 807 F. Supp. at 8,

quoting *Swicegood v. Alabama*, 577 F.2d 1322, 1327 (5th Cir. 1978).  Likewise, in the

context of voice lineups, extreme differences in accent and vocal style may warrant

a finding of suggestiveness, but the mere fact that there are some differences in the

accent and vocal style does not render the voice lineup suggestive.  *United States v.*

*Schultz*, 698 F.2d at 366-367; *United States v. Jones*, 652 F. Supp. at 1575-76.

Here, the voice lineup was not unduly suggestive under this standard. In that regard, the evidence showed that the voice lineup consisted of petitioner and five fillers. The fillers were all African-American males, as was petitioner, and none of the fillers had an outstanding accent (Meehan: H-11). Petitioner was allowed to pick his position in the voice lineup and, although the witness was able to hear very clearly, he could not see the lineup (Meehan: H-11-13). Finally, the detective had petitioner and each of the fillers read the same statement. Thus, the lineup was not unduly suggestive.

Petitioner nevertheless claims that a presumption of suggestiveness was created because the police failed to record the voice lineup. But this point of view has not been adopted by any federal court, much less the Supreme Court of the United States. In the absence of any "clearly established" Supreme Court holding containing such a proposition, petitioner may not rely on it. *See* 28 U.S.C. 2254 (d)(1); *Williams v. Taylor*, 529 U.S. 363, 390 (2000); *Lockyer v. Andrade*, 123 U.S. 1166, 1172 (2003); *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003).

In any event, assuming *arguendo*, that such a presumption does arise from the failure to tape-record a voice lineup, it would necessarily be a rebuttable presumption, as indeed even petitioner concedes (Petitioner's State Brief at 40-41), that the state may easily overcome by offering testimony that describes the identification procedures. Here, any presumption of suggestiveness by the police's

24

failure to tape record the voice lineup was overcome by the police testimony at the pre-trial hearing. Detective Meehan testified that he assembled five fillers for the voice lineup, all of whom were African-American males, with "no outstanding accents, no accent at all" (Meehan: H-11). Moreover, Meehan testified that before the lineup, he spoke to petitioner and to each of the fillers to ascertain whether their voice were similar to petitioner's voice; and according to Meehan, they were (Meehan: H-11). Then Meehan testified about the procedures employed in conducting the voice lineup: petitioner picked his position, the witness was brought to another room where he could hear very clearly (Meehan: H-66), but could not see, the lineup. Each of the fillers and petitioner read the statement: "Where is the money, where is the money? Don't' look, don't look. Where is the money, where is the money?" (Meehan: H-11-13). After each of the six men had read the statement, Meehan asked Michael Thomas if he recognized any voice, and Thomas replied, "Yes," and then identified the voice of petitioner as the one he had heard at the robbery (Meehan: H-13). Based on this testimony, the state adequately overcame any presumption of suggestivity engendered by the police's failure to tape record the proceedings.

Furthermore, even if some suggestivity was inherent in the process, the lineup was admissible because, viewing the totality of the circumstances, Mr. Thomas's pretrial identification was independently reliable, and thus admissible under

*Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).   Indeed, the Supreme Court has dictated that an in-court identification is admissible as long as the pretrial identification procedure was not so unreliable as to raise a "very substantial likelihood of irreparable misidentification." *Id*. at 106-07; *Neil v. Biggers*, 409 U.S. 188, 196-198 (1972); *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967); *Jackson v. Fogg*, 589 F.2d 108, 111 (2d Cir. 1978).   In making such a determination, the Court generally looks to those factors set out in *Neil v. Biggers*, and takes into account: the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the time of the confrontation; and the length of time between the crime and the confrontation. *Id*. at 196-98.

An examination of these factors reveals that Ms. Thomas' identification was sufficiently reliable.   Moreover, there is no indication that the state court misapplied these factors in determining that the identification procedure was not unduly suggestive.   First, Mr. Thomas had ample opportunity to listen to petitioner's voice during the commission of the crime.   For instance, Ms. Thomas had an opportunity to hear petitioner when he first entered Mr. Thomas' place of business, demanded money and threatened to kill Thomas (SH 23-24).   Thereafter, petitioner told Thomas "Don't look," and repeatedly asked, "Where is the money?" (SH 12, 26).   Thus, Mr. Thomas had substantial opportunity to hear petitioner during the crime .

Second, though Mr. Thomas initially indicated that this masked robber was unknown to him, later that same night, he told Detective Meehan that the masked robber's voice sounded familiar and that he thought it may have been a past employee's voice. Thomas told Meehan that he would "get back to [Meehan] when he was certain" (SH 27). One month later, Thomas told Detective Meehan that the masked man was petitioner. Thomas also told Meehan that he had twice worked with petitioner, first time was for a "good period of time" and the second time was just "several months" prior to the robbery (SH 29). Thus, although Thomas did not initially identify petitioner, his identification was based on his listening to petitioner's voice during the lineup and recalling petitioner's voice from when he had worked with him in the past.

Third, the circumstances of the identification were not unnecessarily suggestive. The police followed all applicable procedures in conducting the lineup, including finding fillers who were of the same race as petitioner, with similar voice accent and pattern. Additionally, because Thomas had only heard petitioner's voice during the lineup and, he knew petitioner from having worked with him in the past, the police did not allow Thomas to see petitioner during the lineup. Indeed, during the lineup, Thomas only listened to the voices of petitioner and the five fillers one at a time. Moreover, the voice lineup was conducted only a month after the robbery and Thomas expressed no uncertainty when he identified petitioner as the robber.

27

Additionally, although petitioner was present at the voice lineup and heard the voices of the fillers, he did not claim in his state appellate brief that there were variations between his voice and those of the fillers to create suggestivity.  In fact, in this case, petitioner testified at the pre-trial hearing, and yet, he never alleged that the lineup was suggestive because his voice was somehow distinguishable from the fillers' or that his voice was substantially different from the fillers' voices.  Thus, the voice lineup was fairly conducted.

Given these circumstances, there is no reason to question whether the state court correctly applied Supreme Court precedent.  Indeed, there is no merit at all to petitioner's claim that the identification procedure was tainted.  *See Snow v. Reid*, 619 F. Supp. 579, 581-82 (S.D.N.Y. 1985).  Therefore, a writ of habeas corpus is not warranted with respect to this claim.

## POINT THREE

**PETITIONER'S CLAIM THAT HIS RIGHT TO COUNSEL WAS VIOLATED WHEN, AFTER AN ATTORNEY HAD BEEN ASSIGNED TO PETITIONER'S CASE, THE DETECTIVES QUESTIONED HIM ABOUT AN UNRELATED MATTER DOES NOT PRESENT A FEDERAL CONSTITUTIONAL QUESTION (Answering Point Five [4] of the Petition).**

In March of 1996, petitioner, while in custody on this case, filed a complaint against Detective Kevin Meehan, alleging that Meehan had failed to investigate a homicide about which petitioner had given him information, and that Meehan's failure to do so subsequently resulted in the deaths of two other people.  In response to petitioner's complaint, two detectives from the Internal Affairs Bureau ("I.A.B.") met with petitioner on March 13, 1996.  Petitioner told the I.A.B. detectives that he had the gun that had been used during the homicides, and arranged for the detectives to pick it up from his girlfriend's house, which they did later that day.  Throughout the interview, neither petitioner nor the detectives ever mentioned the Continental Services robbery, neither detective knew that Detective Meehan had been the arresting officer in that robbery, and neither detective suspected that the gun petitioner told them about had anything to do with the robbery for which petitioner was being held.  Subsequent ballistics test revealed that the gun was not related to either of the homicides, and that petitioner's complaint against Detective Meehan was unfounded.  The case file was, therefore, closed.  More than one year later, in April

of 1997, the Assistant District Attorney assigned to the instant case, while preparing for trial, contacted the I.A.B. to see if there was any *Rosario* material in their file. Fortuitously, she learned that petitioner had surrendered a gun to the I.A.B. detectives. She subpoenaed the gun, and subsequent ballistics tests revealed that the bullet recovered from the wall of the Continental Services office had been fired from petitioner's gun.

Based upon these facts, petitioner claims, as he did in his Appellate Division brief, that, because his right to counsel had attached, the police were precluded from questioning him in the absence of counsel and, therefore, the gun and his statements should have been suppressed. But, petitioner's claim does not raise a question of federal law and should not, therefore, be reviewed by this Court. To the extent, however, that this Court finds that petitioner's claim implicates petitioner's federal constitutional right to counsel, this Court should nevertheless not review the claim because the claim is procedurally barred from review. Petitioner failed to present the federal constitutional nature of his claim to the state courts and no longer has a forum in which to do so. Nor has he given this Court any reason to overlook his procedural default. Therefore, petitioner is not entitled to the writ.

A.    **Petitioner's Complaint That His Right to Counsel Was Violated When The Police Questioned Him About A Matter Unrelated to Case For Which He Had Been Arrested Fails to Present a Federal Constitutional Issue.**

In order to obtain a writ of habeas corpus, a petitioner must establish that he is being held in violation of the constitution or laws of the United States. *See* 28 U.S.C. §§ 2241(c), 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Absent a federal violation, a federal court has no power to grant a writ of habeas corpus. Consequently, any claim that the state court erred as a matter of state law does not present a question reviewable in a habeas corpus proceeding. *See, e.g., Pulley v. Harris*, 465 U.S. 37, 41 (1984). And because a claim of error under state law is unreviewable in a federal habeas proceeding, a state-law claim cannot provide a basis for arguing that prejudice would result if a procedural default is not set aside.

Here, the questioning of petitioner on a matter unrelated to the case for which he was represented by counsel raises a question of state law only. Indeed, under the federal constitution, a defendant can be questioned with regard to unrelated matter even if he was represented on the charge for which he is in custody. *Texas v. Cobb*, 532 U.S. 162 (2001); *Black v. Goord*, 419 F. Supp.2d 365 (D.C.W.D. 2006). Indeed, a defendant who had an attorney with regard to the burglary of a residence could be questioned without the attorney with regard to two homicides that occurred during the burglary because there were separate offenses involved. This is because

31

the protection of the Sixth Amendment is deemed to be offense-specific. *McNeil v. Wisconsin*, 501 U.S. 171 (1991).

In contrast, in New York, the well settled rule is that incriminating statements obtained from a defendant after a lawyer has entered the proceeding are inadmissible if procured by custodial interrogation in the absence of counsel or a waiver. *People v. Burdo*, 91 N.Y.2d 146 (1997); *People v. Rogers*, 48 N.Y.2d 167 (1979). Moreover, under New York law, the protections extended by this right apply to investigations made by the Internal Affairs Division of the New York City Police Department in response to complaints by a defendant. *People v. Towens*, 41 N.Y.2d 97 (1976); *People v. Roberson*, 41 N.Y.2d 106 (1976). And, here, in his brief to the New York State appellate court, upon which he now relies to articulate his current claim to this Court, petitioner relied exclusively on New York law to support his claim that the gun and his statement about the gun should have been suppressed because his right to counsel had attached (*see* Petitioner's State Brief at 48-54). Thus, petitioner is not entitled to habeas relief as his claim relies solely on a perceived error of state law.

**B.    Petitioner's Right to Counsel Claim is Procedurally Barred From Review in this Court**

Likewise, petitioner's unelaborated allegation that his right to counsel was violated because the police questioned him outside the presence of counsel is not cognizable here because it was not exhausted in the state courts, and must now be

deemed procedurally barred from review.  Here, on his direct appeal in state court, petitioner argued that his right to counsel had attached and that the New York Court of Appeals' ruling in *People v. Rogers*, 48 N.Y.2d at 167, precluded the police from questioning him about matters related or unrelated to the charges for which he was under arrest in the absence of counsel (Petitioner's State Brief at 48-54).  Therefore, his current constitutional claim was not fairly presented in that forum, and is, thus, unexhausted.  *See* 28 U.S.C. § 2254(b) and (c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982).  Moreover, as petitioner no longer has any procedure available to him in state court by which to raise his unexhausted claim, having already taken the one direct appeal to which he is entitled, this Court should "deem the claim to be exhausted" but procedurally barred from habeas review as a result of the petitioner's failure to have raised it in the state court. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

As his claim is procedurally barred, petitioner can obtain *habeas corpus* review of it only by establishing cause for his procedural default *and* resulting prejudice, or that a fundamental miscarriage of justice will occur if this Court does not review the claim.  Petitioner cannot do so here.  First, petitioner cannot establish cause for his default.  He has not alleged ineffective counsel as cause for his default nor has he alleged any outside facts or circumstances otherwise precluding him from raising the issue.  *See Murray v. Carrier*, 477 U.S. at 478.

As discussed above, a petitioner cannot establish prejudice when the alleged constitutional claim really only presents an issue of state law, or presents an issue that is not otherwise cognizable in a habeas corpus proceeding. Here, petitioner's claim does not implicate a federal constitutional right. Thus, he cannot establish that he would be prejudiced by non-review of his claim.

Finally, for the reasons stated above, petitioner cannot establish that this Court's failure to consider the claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). He has, indeed, not even attempted to establish his innocence. Accordingly, there is no basis to excuse petitioner's procedural default.

*   *   *

In sum, petitioner's claim that his right to counsel was violated when the police questioned him about an unrelated matter in the absence of the counsel does not present a federal constitutional question cognizable on habeas review. Moreover, petitioner's unelaborated claim of a violation of his right to counsel – first asserted in the petition before this Court – was not exhausted in state court and is now procedurally barred from review. Accordingly, the writ may not issue on the basis of this claim.

## POINT FOUR

**THE STATE COURT'S REJECTION OF PETITIONER'S CLAIMS REGARDING THE TRIAL COURT'S EVIDENTIARY RULINGS IS NEITHER CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, WELL-SETTLED SUPREME COURT LAW. IN ANY EVENT, ANY ERROR IS HARMLESS (Answering Point Five [5] of the Petition).**

Petitioner claims that the trial court deprived him of his right to present a defense when the court precluded petitioner from calling Detective McHugh as a defense witness. But petitioner cannot show that the state court's rejection of this claim was either contrary to, or an unreasonable application of, clearly-established Supreme Court law.

Indeed, the record establishes that the trial court acted well within its discretion in denying petitioner a further adjournment. On Thursday, June 25, 1998, the trial court repeatedly instructed petitioner, who had engaged in numerous dilatory tactics throughout the trial, and had been persistently disruptive, vulgar, and rude, that he should be ready to present a defense and sum up on Monday, June 29, 1998, and that there would be no further delay (Proceedings: 766-67; 834-35; 838; 840). On Monday, June 29, petitioner was not prepared to call any of his eleven witnesses to testify, and requested a forty-minute adjournment. The court granted petitioner's request for an adjournment until the next morning, but admonished him that he must have all of his witnesses ready and available at 10:00 a.m. on Tuesday morning, and

must also be prepared to sum up (Proceedings: 989-993). On Tuesday, June 30, petitioner presented the testimony of Bernice Sutton – the only one of his eleven defense witnesses that was available to testify (Proceedings: 994-98; 1029-1032). The ensuing colloquy revealed that petitioner's legal advisor had served several subpoenas on June 18th, 1998, requesting various documents and the presence of "Detective MacHuge"[5] (hereinafter, McHugh), who was allegedly a "crucial" defense witness. According to petitioner's legal advisor, the Nassau County Police department refused to accept that subpoena, and, apparently, no other attempts were made to secure McHugh's appearance from June 19th until June 30th. Nor were any subpoenas served on any of the other ten defense witnesses (Proceedings: 1033-1035). Thus, under these circumstances, the court properly refused to further delay the trial, and instructed petitioner to sum up (Proceedings: 1046-1051). Petitioner protested, but ultimately delivered a four and one-half hour long summation, which spanned more than one-hundred and thirty pages in the trial record (Proceedings: 1053-1184).

Now petitioner claims, as he did in his state brief, that the court's refusal to grant a further adjournment – which allegedly forced him to deliver an unprepared summation and robbed him of the opportunity to question his "key witness" – constituted a violation of his right to present a defense (Petitioner's State

_____

[5]Presumably, the detective to which petitioner intended to refer was Detective McHugh, who had arrested petitioner for the robbery of a Martin Paint store, and who was present in the precinct on the night of the voice lineup. It appears from the record that petitioner had misspelled McHugh's name on his witness list, and possibly in the subpoena as well.

Brief at 54-55). In his state brief, petitioner also argued that he did all that he could to compel the witnesses' appearance, and that the court was unreasonable in requiring petitioner, "a jailed, *pro se* defendant, to take steps beyond serving a subpoena" on Detective McHugh, and in refusing to allow petitioner's mother twenty minutes to contact a potential witness (Petitioner's State Brief at 56-57). But, as explained below, the factual predicates for petitioner's claims are based upon a distortion of the record. The state court, therefore, reasonably rejected petitioner's claims when he raised them on appeal. In any event, any error, whether constitutional or not, was harmless due to the strength of the evidence against petitioner and the unlikelihood that the challenged rulings had any impact on the verdict.

Petitioner filed his petition after the effective date of the AEDPA, and the petition is therefore governed by the that Act. Under the deferential standard of review contained in 28 U.S.C. §2254 (d) (1), if a state court "adjudicates" a petitioner's federal claim "on the merits" a federal court may not grant a writ of habeas corpus unless the state court decision is contrary to, or an unreasonable application of, clearly established Supreme Court precedent. A federal claim is adjudicated "on the merits" in state court even if the state court does not explicitly refer to either the federal claim or relevant federal case law. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

Here, petitioner's claim was in fact decided "on the merits" by the Appellate Division.  In fact, after the court rejected petitioner claims regarding the prosecutor's cross-examination at the grand jury proceeding and the voice identification procedure, it held that defendant's remaining contentions, of which this was one, were without merit.  *People v. King*, 291 A.D.2d at 414.  Furthermore, the New York State Court of Appeals declined to disturb this ruling.  *See People v. King*, 98 N.Y.2d 677.  Thus, because the state court adjudicated petitioner's federal claim "on the merits," this Court should defer to the state court's findings and deny petitioner's writ for habeas relief.

Thus, this Court may not grant a writ of  habeas corpus unless the petitioner establishes that the state court's rejection of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the decision was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d) (1), (2); *Williams v. Taylor*, 529 U.S. 362 (2000).  Here, petitioner has failed to establish either.

In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held that although the right to present a defense is one of the "minimum essentials of a fair trial," *Id.* at 294, that right is not unlimited.  *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988).  Instead, a trial court may place restrictions on a defendant's

38

presentation of evidence without offending the constitution, so long as those restrictions serve "legitimate interests in the criminal trial process . . . and are not 'arbitrary or disproportionate' to the purpose they are designed to serve." *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 [1987]).  Indeed, the Second Circuit has ruled that "even where the exclusion of evidence affects the defense case, we afford judges broad latitude 'in excluding evidence that poses an undue risk of "harassment, prejudice [or] confusion of the issues'" and review their evidentiary determinations for "abuse of discretion." *United States v. Szur*, 289 F.3d 200, 217 (2d Cir. 2002) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 [1986]).

Moreover, a motion for a continuance to facilitate the presentation of evidence by an accused remains entrusted to the discretion of the trial court; the denial of a continuance violates an accused's Constitutional rights only where "the denial of a continuance was arbitrary and . . . the denial substantially impaired (the accused's) defense." *United States v. Edwards*, 101 F.3d 17, 18 (2d Cir. 1996); *United States v. King*, 762 F.2d 232, 235 (2d Cir. 1985); *Wood v. Artuz*, 39 F. Supp.2d 211, 214 (E.D.N.Y. 1999).  Indeed, although a defendant has a fundamental constitutional right to present witnesses in his defense, *Chambers v. Mississippi*, 410 U.S. 284, nevertheless the question of whether to grant a continuance in order to facilitate the calling of a particular witness falls under the general rule.  *United States v. King*, 762

39

F.2d at 235. Applying the general rule stated above in the context of a denial of a continuance to secure a witness, courts have looked to four factors: (1) whether due diligence was exercised to obtain the witness; (2) whether substantial favorable evidence would be offered by the witness; (3) whether the witness is available and willing to testify; and (4) whether the denial of the continuance would materially prejudice the defendant. *See United States v. Rodriguez*, 15 F.3d 408, 411 (5th Cir. 1994); *United States v. O'Neill*, 767 F.2d 780, 784 (11th Cir. 1985); *United States v. Walker*, 621 F.2d 163, 168 (5th Cir. 1980).[6] Here, the trial court's ruling denying petitioner a second adjournment to procure his elusive witnesses did not deprive him of his right to present a defense.

First, petitioner did not act diligently in attempting to procure his witnesses' appearance. According to petitioner's legal advisor, no subpoenas were served on any of the defense witnesses except McHugh, and that one subpoena was apparently rejected by the police department on grounds not reflected in the record.

---

[6]Indeed, although the United States Supreme Court held in *Lee v. Kemna*, 534 U.S. 362 (2002) that the denial of continuance claim could be reviewed despite state court's invocation of state procedural rules, the Court did not address the merits of the claim raised in that case. In any event, the facts of *Lee v. Kemna* are distinguishable from this case. In *Lee*, the trial court denied petitioner's request for a continuance even though petitioner provided an offer of proof as to his witnesses' testimony, the witnesses had come to the trial from out of state, and the witnesses had been waiting outside the courtroom to testify and inexplicably "disappeared" prior to their testifying. In contrast, here, petitioner provided a conclusory statement of the offer of proof, apparently did not properly serve his subpoena on the witnesses, did not follow-up on the service of the subpoena, and the witness did not appear in court. Thus, to the extent that *Lee* holds that a failure to grant a continuance could result in depriving a petitioner of his right to present a defense, it is distinguishable from this case.

Additionally, the subpoena intended for Detective McHugh was signed by the court on June 10, 1998, and served on June 18, 1998.  Then, in the twelve days that followed, petitioner made no further attempt to secure McHugh's appearance, or even to inform him of the date that he should come to testify.  Indeed, although on Thursday, June 25th, the court admonished petitioner to be ready on Monday, June 29th, neither petitioner nor his legal advisor contacted McHugh or any of his other witnesses during that three-day recess.  Then, when the court on Monday granted petitioner another one-day adjournment to secure his witnesses' attendance, petitioner again neglected to even attempt to contact ten of his eleven witnesses, including McHugh.  And the reasons advanced at trial, and on his state appeal, for petitioner's negligence are disingenuous at best.

Petitioner claimed in state court that he could not do anything more to secure the witnesses' attendance because he was *pro se*, and incarcerated, and, thus, could not call the witnesses or drive out to get them.  But this transparent excuse is belied by the record, which shows that petitioner had a court-appointed legal advisor who was willing and able to contact petitioner's witnesses if petitioner had so requested.  Indeed, the one subpoena served was prepared and served by petitioner's legal advisor.  And the record is devoid of any request by petitioner that his advisor take additional steps to secure the witnesses' attendance, such as a material witness order.  Thus, under these circumstances, it cannot be said that petitioner acted

41

diligently to have his witnesses ready; to the contrary, it is clear from the record that petitioner, in line with his regular pattern of delay throughout the trial, made no reasonable attempts to have his witnesses available to testify. Thus, the state correctly rejected petitioner's claim.

Second, petitioner never showed that any of the ten remaining defense witnesses was material. Indeed, petitioner did not even attempt to make an offer of proof about the relevance of the testimony of any of his witnesses except Detective McHugh. And as to McHugh, petitioner's claim that this detective's testimony would have conclusively established that petitioner was framed by the police was entirely conclusory; thus, irrespective of petitioner's claim that McHugh's testimony was "crucial" to the defense, in the court's assessment, McHugh did not appear to be a material witness. Indeed, a review of the papers in petitioner's file reveals that Detective McHugh was the officer who arrested petitioner for an unrelated robbery of a Martin Paint store on December 31, 1995, and, thus, was unlikely to have any material information about petitioner's involvement in this case. And, to the extent that McHugh would have had any information about this case, his testimony would have been merely cumulative to that of Detective Meehan, Detective Dorsey, Detective Roberson, or Detective Amato, all of whom had already been extensively cross-examined by petitioner with regard to their role in the alleged police conspiracy to frame him. Thus, on the basis of this factor alone, the court was justified in

42

refusing to further delay the trial to allow petitioner to locate his ten missing, non-material, witnesses.

Third, there is no indication in the record that either McHugh, or any of the other witnesses, were actually in the jurisdiction and available to testify at any time to which the trial may have been deferred. Indeed, petitioner did not even have the birth dates or addresses of any of his witnesses, did not know their full names or the correct spelling of their names, and did not speak to them about the trial or inform them that they would be witnesses; thus he certainly did not know their location, availability, or willingness to testify.

On this point, however, in his brief in state court, petitioner claimed that his mother could have procured the attendance of at least one of the witnesses if she had been given twenty minutes. But the record offers no assurance that this is so; to the contrary, after being given an opportunity to confer with his mother off the record, petitioner made no request for a short adjournment, did not name the witness, did not make any offer of proof as to the witness's testimony or availability, and, instead, stated: "All right. Let's just do this. Come on." Thus, the third factor of the analysis also compels the rejection of petitioner's claim.

Fourth, petitioner suffered no prejudice as a result of the court's refusal to grant his request for another adjournment. As discussed above, there is no support in the record for the proposition that another adjournment would have enabled

petitioner to secure the attendance of any other witnesses; and even if he would have been able to do so, there is no reason to believe that any witness's testimony – even McHugh's – would have been material or exculpatory, and that it could have affected the jury's verdict. Indeed, on the contrary, if petitioner had called McHugh to testify, it is likely that the testimony would have actually harmed the defense, for McHugh would have testified about petitioner's involvement in the Martin Paints robbery, thus opening the door to the prosecutor to elicit the details of that very similar robbery on cross-examination. Thus, the court's denial of an adjournment did not prejudice petitioner.

In any event, to the extent that the court committed error in refusing to grant another continuance, any error was harmless in light of the overwhelming proof of his guilt. A constitutional error requires vacatur of a state conviction on collateral habeas review only if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 673-38 (1993). Indeed, even an evidentiary ruling that excludes relevant exculpatory evidence in violation of the defendant's right to present a defense is subject to harmless-error review. *See Crane v. Kentucky*, 476 U.S. 683, 691 (1983); *Delaware v. Van Arsdall*, 475 U.S. at 684. The Supreme Court has consistently held that violating a defendant's right to present a defense may be harmless error. *See Arizona v. Fulminate*, 499 U.S.

279, 306-07 (1991); *see*, *e.g.*, *Crane v. Kentucky*, 476 U.S. at 691; *Delaware v. Van Arsdall*, 475 U.S. at 684.

Here, even if this Court were to find that the state court's denial of a continuance violated petitioner's right to present a defense, there is no reasonable possibility that the court's restrictions had a "substantial and injurious effect" on the outcome of petitioner's trial because the evidence of his guilt was overwhelming. *Brecht v. Abrahamson*, 507 U.S. at 637-638.

As recited above, petitioner had been identified as one of the robbers by Michael Thomas – a man with whom he had worked closely, who was his friend, and who had no reason to frame him.  The other victim testified at trial that petitioner sounded like one of the robbers, and matched the physical description.  The bullet recovered from the scene had been fired from petitioner's gun.  And, finally, petitioner had given a detailed statement to the police, in which he admitted his involvement in the robbery and specifically referred to one of the victims as "Mike," although the police had not divulged the victims' identities.  In short, petitioner would not have been acquitted had the court granted petitioner's request for an adjournment. And given that the evidence was overwhelming against petitioner, any error was harmless.

## CONCLUSION

For the reasons set forth above, petitioner's petition for a writ of habeas corpus should be summarily denied.  Additionally, petitioner has not presented this Court with any issue that would warrant the issuance of a certificate of appealability. As demonstrated above, petitioner's claims are barred from review in this Court and no jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 554-55 (2000); *ElRhagi v. Artuz*, 309 F.3d 103 (2d Cir. 2002); *see also Eltayib v. United States*, 294 F.3d 397 (2d Cir. 2002) (holding that certificate should issue in case when habeas petition denied on procedural grounds without reaching underlying constitutional claims, and jurists of reason would find it debatable whether petition states valid claim of denial of constitutional right and that jurists of reason would find it debatable whether district court correct in its procedural ruling).  Thus, since petitioner's claims would not entitle him to a writ of habeas corpus or present the Second Circuit with any debatable questions of federal law, his petition is not worthy of further review.

Respectfully submitted,


RICHARD A. BROWN
District Attorney
Queens County



JOHN M. CASTELLANO
USHIR PANDIT
     Assistant District Attorneys
       of Counsel


May 23, 2006

48