UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BRUCE KING,

              Petitioner,

      -against-

WILLIAM E. PHILLIPS, Superintendent,
Green Haven Correctional Facility,

              Respondent.
------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   NOV 0 6 2008

P.M.
TIME A.M.

## REPORT AND RECOMMENDATION
03-CV-6045 (NGG) (LB)

BLOOM, United States Magistrate Judge:

    The Honorable Nicholas G. Garaufis, United States District Judge, referred this petition

seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to me for a Report and

Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is

respectfully recommended that the petition should be denied.

### BACKGROUND

    I. Facts

    On November 29, 1995, at approximately 8:00 p.m., petitioner and an accomplice[1]

entered Continental Services, an office where petitioner had formerly been employed, and held

two employees Michael Thomas ("Thomas") and Marie Gehring ("Gehring") at gunpoint and

demanded money. T at 50-55, 549, 551.[2] The employees stated that there was no company money

---

[1] On August 8, 1996, petitioner's accomplice, Carl Dade, pled guilty to two counts of Attempted
Robbery in the First Degree, two counts of Attempted Robbery in the Second Degree, and Criminal
Possession of a Weapon in the Third Degree. See Affidavit and Memorandum of Law in Opposition to
Writ of Habeas Corpus at 2, n.1

[2] T refers to the transcript for the Jury Trial.



on the premises. However, Gehring offered the money that she had in her purse. After taking

Gehring's money, petitioner fired a shot and fled the scene. T at 53, 552. Although petitioner was

wearing a ski mask during the robbery, Thomas recognized petitioner's voice, and subsequently

identified petitioner in a voice line-up. On January 2, 1996, following the identification,

petitioner was arrested and gave police a written statement, admitting that he had participated in

the robbery, but alleging that it was his accomplice who fired the gun.

In March 1996, while petitioner was in custody for the Continental Services robbery,

petitioner filed a complaint against Detective Kevin Meehan, ("Meehan") the arresting officer in

the case. T at 378. Petitioner alleges that he gave Meehan information on an unrelated double

homicide, and that Meehan's failure to follow-up on that homicide resulted in a subsequent

murder and robbery. T at 378-380, C at 29, 49-50.[3] On March 13, 1996, petitioner met with two

detectives from the Internal Affairs Bureau ("IAB") to discuss his allegations against Meehan. At

that time, petitioner told the IAB detectives that he had the gun that was used in the double

homicide, and arranged for the IAB detectives to obtain the gun. T at 380-382, C at 50-51.

Subsequent ballistics tests revealed that the gun was not related to either of the homicides. T at

386-387, C at 15, 47. Petitioner's allegations against Meehan were deemed unfounded..

In April 1997, Karen Lynch, the Assistant District Attorney ("Lynch") assigned to

prosecuting the Continental Services robbery case, learned that in response to a complaint filed

by petitioner against Meehan, petitioner had been interviewed by the IAB. Lynch contacted the

IAB detectives and was informed that a gun had been recovered as a result of the investigation.

C at 52-54, 70. Lynch subpoenaed the file and the gun, and subsequent ballistics tests revealed

---

[3] C refers to the transcript for the Good Cause hearing held on August 5, 1997.

2

that the bullet recovered from the Continental Services robbery had been fired from petitioner's gun. T at 519.

A. Pre-trial Hearings

On August 5, 1997, a Good Cause hearing was held before the Honorable Joel L. Blumenfeld, pursuant to section 710.30 of New York's Criminal Procedure Law.[4] Petitioner argued that his March 13, 1996, statement regarding the gun that was used in the double homicide, should be precluded, because the state did not serve the statement upon him until a year and two months later. The Court held that "there is good cause for not having served it within fifteen days of arraignment, because within fifteen days of arraignment, they had no clue that the [petitioner] made this statement or what its relevance to this case." C at 97-98.

Moreover, prior to trial, a Wade-Huntley hearing was held before the Honorable Justice Timothy J. Flaherty.[5] In a decision dated July 23, 1997, the trial court denied petitioner's suppression motion and upheld the voice and physical identification of petitioner, as well as his

---

[4] Section 710.30 provides, in pertinent part:

1. Whenever the people intend to offer at a trial ... evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, ... they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

2. Such notice must be served within fifteen days after arraignment and before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial, pursuant to subdivision one of section 710.40, to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such notice, thereafter and in such case it must accord the defendant reasonable opportunity thereafter to make a suppression motion.

N.Y.Crim. Proc. Law § 710.30 (1), (2).

[5] A Wade hearing is held to determine whether the pretrial identification was unduly suggestive. United States v. Wade, 388 U.S. 218 (1967). A Huntley hearing is held to determine the voluntariness of a confession. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

3

oral and written statements. See People v. King, Ind. No. 3320-96, slip op. (Sup. Ct. Queens County, July 23, 1997).

Following, a jury trial, in Supreme Court, Queens County, petitioner was convicted of Robbery in the First Degree, Robbery in the Second Degree, Attempted Robbery in the First Degree, and Attempted Robbery in the Second Degree. See People v. King, 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept. 2002). On August 11, 1998, petitioner was sentenced to a concurrent indeterminate term of imprisonment of twelve and one-half to twenty-five years on the First Degree Robbery conviction and seven and one-half to fifteen years on the Second Degree Robbery conviction, to run consecutive to concurrent indeterminate terms of seven and one-half to fifteen years on the Attempted First Degree Robbery conviction, and three and one-half to seven years on the Attempted Second-Degree Robbery conviction. S at 45-46.[6]

II. Procedural History

A. Direct Appeal

Petitioner, appealed his conviction to the Appellate Division, Second Department and argued that: (1) the integrity of the Grand Jury proceeding was impaired by the prosecutor's improper comments; (2) the trial court erred when it denied suppression of the voice lineup; (3) his right to counsel was violated when IAB detectives interviewed him after his right to counsel had attached; (4) that the trial court deprived petitioner, who was proceeding *pro se*, the right to present a defense by refusing to grant his request for an adjournment; and (5) that the court reporter unilaterally amended the sentencing transcript without a settlement hearing. (Brief for defendant-appellant at 11-20).

---

[6] S refers to pages of the sentencing transcript.

By opinion dated February 4, 2002, the Appellate Division affirmed petitioner's

conviction holding:

> The Supreme Court properly denied the defendant's motion to dismiss the indictment. At the grand jury, the prosecutor had the right to cross-examine the defendant and to impeach him "within the limits of proper cross-examination" (People v. Rosa, 145 Misc.2d 423; see, People v. Karp, 76 N.Y.2d 1006, revg. 158 A.D.2d 378). Contrary to the defendant's contention, the prosecutor's cross-examination did not exceed permissible boundaries so as to render the proceedings defective (see, CPL 210.35[5]; People v. Huston, 88 N.Y.2d 400, 409). Therefore, the Supreme Court properly denied the defendant's motion to dismiss the indictment on that ground.
>
> The hearing court properly denied that branch of the defendant's omnibus motion which was to suppress voice identification evidence. The failure of the police to produce an audiotape of the voice lineup created a presumption of suggestiveness (see, People v. Collins, 60 N.Y.2d 214, 218; People v. Wedgeworth, 156 A.D.2d 529). However, the police overcame that presumption by the testimony of the arresting officer who oversaw the lineup, which demonstrated that the procedures utilized were not impermissibly suggestive (see, People v. Brennan, 222 A.D.2d 445). Once the People met their initial burden, the burden shifted to the defendant to prove that the identification procedure was unduly suggestive (People v. Chipp, 75 N.Y.2d 327, cert. denied 498 U.S. 833). The defendant failed to do so.
>
> In any event, the People established that the identification was merely confirmatory, since the identifying witness had worked with the defendant for years, and the defendant acknowledged that he was well acquainted with the witness (see, People v. Rodriguez, 79 N.Y.2d 445, 452). Therefore, there is no basis in the record for disturbing the hearing court's determination.
>
> The defendant's remaining contentions are without merit.

See People v. King, 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept. 2002). On June 24, 2002, the

New York Court of Appeals denied petitioner leave to appeal. People v. King, 98 N.Y.2d 677

(2002).

### B. Habeas Petition

Petitioner, proceeding *pro se*, filed the instant habeas petition on November 17, 2003.

The petition raises five grounds, each of which contains several claims. By order dated May 3,

2005, this Court dismissed, as unexhausted, Grounds One through Four. Accordingly, the only ground that remains to be addressed in this Report and Recommendation is Ground 5 which alleges that: petitioner was deprived of his right to a fair trial because the prosecutor impaired the grand jury; the trial court erred in not suppressing an unrecorded voice identification; the police improperly questioned petitioner outside the presence of counsel; and petitioner was denied the opportunity to present a defense on his behalf. See Ground Five of Habeas Petition.

On December 6, 2007, petitioner filed a motion to compel respondent to produce additional documents, and for an extension of time to reply to respondent's opposition to the writ. See docket entry 29. As petitioner was granted numerous extensions of time to reply, petitioner's motion is denied but will be construed as his reply.

## DISCUSSION

I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1); See Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (holding that the phrase federal law refers only to "clearly established Supreme Court precedent").

Clearly established Federal law is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 412

6

(2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413; Earley, 451 F.3d at 74.

AEDPA establishes a deferential standard of review: the relevant inquiry under AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." Schriro v. Landrigan, --- U.S. ----, 127 S.Ct. 1933, 1939 (2007); Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Gilchrist, 260 F.3d at 93 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord Earley, 451 F.3d at 74.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; see also Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam); Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 277 (2d Cir. 2003). Federal habeas corpus relief does not lie for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); DiGuglielmo v. Smith, 366 F.3d 130, 136-37 (2d Cir. 2004).

7

Furthermore, as long as the state court disposes of the federal claim on the merits and reduces its disposition to judgment, the deference demanded of a federal habeas court by § 2254(d)(1) applies even if the state court does not explicitly refer to either the federal claim or to relevant federal case law. Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006); Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Applying this standard to this case, petitioner's application for a writ of habeas corpus should be denied.

II. Petitioner's Claims

A. Voice Lineup

Petitioner alleges that the trial court erred when it ruled that the voice identification of petitioner by Thomas, a witness to the robbery, should not be suppressed. Petitioner further alleges that the failure to preserve the voice lineup by an audiotape of the procedure was unduly suggestive. (Brief for defendant-appellant at 38, 40).

The Court employs a two-step inquiry to evaluate out-of-court identification procedures. See Neil v. Biggers, 409 U.S. 188 (1972); Velazquez v. Poole, No. 04 CV 478, 2007 WL 3240550, at *23 (E.D.N.Y. Oct. 30, 2007). First, a court must determine whether the identification procedure was impermissibly suggestive and if so, whether it was so suggestive as to raise "a very substantial likelihood of irreparable misidentification." Id. at 198; see also United States v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994).

If the procedure was not suggestive, the identification presents no problems regarding admissibility. See Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir. 1986); Ortiz v. Artus, No. 06 Civ. 6444, 2008 WL 2369218, at *6 (S.D.N.Y. June 9, 2008). If however, the court finds the procedures were unnecessarily suggestive, it must then determine whether the identification was

8

nonetheless independently reliable. <u>Manson v. Brathwaite</u>, 432 U.S. 98, 110-14 (1977); <u>Raheem v. Kelly</u>, 257 F.3d 122, 133 (2d Cir. 2001). In short, identification evidence will be admissible if (a) the identification procedures used were not suggestive or (b) the witness' identification has independent reliability. <u>Raheem</u>, 257 F.3d at 133 (citing <u>Manson</u>, 432 U.S. at 114); <u>Hornedo v. Artus</u>, No. 04 CV 3201, 2008 WL 346360 at *12 (E.D.N.Y. Feb. 6, 2008).

Applying these principles to the voice identification procedure employed by the police in this case, the state court decision was not contrary to or an unreasonable application of Federal law. Even if the voice identification had been suggestive, the Court found that the procedure was independently reliable. As the suppression court noted, the voice identification was necessitated by the fact that petitioner was masked during the robbery. <u>See</u> <u>People v. King</u>, Ind. No. 3320-96, slip op. (Sup. Ct. Queens County, July 23, 1997). Meehan testified at trial that petitioner was put in a room with five fillers, was given a choice of what number and what seat he would like. T at 169. The fillers and petitioner had the same general characteristics and voices, including no distinctive accents of any kind. T at 172. At the lineup, petitioner and the fillers recited the words that Thomas stated were said to him during the robbery. T at 170-171. Thomas was in a separate room behind a wall and was unable to view the lineup. T at 172. At the voice lineup, Thomas was able to identify petitioner as the individual who robbed him at the Continental Services office. The voice lineup was confirmed by a physical lineup, at which Thomas once again identified petitioner. T at 175.

Under § 2254, the Court must presume the correctness of the trial court's factual findings that the police adequately maintained the integrity and fairness of the voice identification. <u>See</u> 28 U.S.C. § 2254(d)(2), (e)(1).

9

Following a suppression hearing, the trial court held:

> The challenge to the voice line-up of the defendant is without merit. In this case, a
> voice identification was necessitated by the fact that the perpetrator has been
> masked during the robbery. Additionally, prior to the voice line-up, the
> complainant had identified the defendant, who was previously known to him as
> the perpetrator of the robbery. Therefore, the defendant's claim that the voice
> identification of the defendants is unreliable is contrary to long established law
> and must be rejected (citations omitted).

See People v. King, Ind. No. 3320-96, slip op. at 4 (Sup. Ct. Queens County, July 23, 1997).

The Appellate Division further reviewed this claim:

> The failure of the police to produce an audiotape of the voice lineup created a
> presumption of suggestiveness (see, People v. Collins, 60 N.Y.2d 214, 218;
> People v. Wedgeworth, 156 A.D.2d 529). However, the police overcame that
> presumption by the testimony of the arresting officer who oversaw the lineup,
> which demonstrated that the procedures utilized were not impermissibly
> suggestive (see, People v. Brennan, 222 A.D.2d 445, 635 N.Y.S.2d 39). Once the
> People met their initial burden, the burden shifted to the defendant to prove that
> the identification procedure was unduly suggestive (People v. Chipp, 75 N.Y.2d
> 327 cert. denied 498 U.S. 833). The defendant failed to do so.

> In any event, the People established that the identification was merely
> confirmatory, since the identifying witness had worked with the defendant for
> years, and the defendant acknowledged that he was well acquainted with the
> witness (see, People v. Rodriguez, 79 N.Y.2d 445, 452).

See People v. King, 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept. 2002).

Petitioner has not rebutted the presumption of correctness of the state court's factual
findings by clear and convincing evidence as required under § 2254. Moreover, that the voice
lineup was not recorded does not render the lineup impermissibly suggestive. See People v.
Wallington, 271 A.D.2d 384, 708 N.Y.S.2d 60 (1st Dept. 2000) (lack of a tape recording of the
vocal aspect of a lineup did not require suppression). Accordingly, the state courts' decision that
the lineup was not suggestive was neither contrary to, nor involved an unreasonable application

of clearly established Federal law. See 28 U.S.C. § 2254(d), (e)(1). Therefore, this claim should be denied.

B. Grand Jury

1. Exhaustion

Petitioner argues that the prosecutor's cumulative misconduct impaired the integrity of the grand jury proceeding. (Brief for defendant-appellant at 27). Specifically, petitioner alleges that following his testimony at the grand jury, the prosecutor injected her opinion about petitioner's guilt, attacked his failure to come forward earlier with his alibi defense, became an unsworn witness against him, and suggested that petitioner had a propensity to commit armed robberies. Id.

Respondent argues that this challenge to the grand jury proceedings is unexhausted because petitioner's brief did not alert the Appellate Division to the federal constitutional nature of petitioner's argument. See Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 17. This Court agrees.

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted his remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts his state-court remedies by fairly presenting each federal claim for relief to the highest state court capable of review. See, e.g., Baldwin v. Reese, 541 U.S. 27 (2004); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005) (to be eligible for habeas relief, the substance of claim must have been fairly presented to the state appellate court); Fama v. Com'r of Corr. Servs., 235 F.3d 804, 808-09 (2d Cir. 2000). Such fair presentation to the state court requires that the petitioner assert the same legal theory and premise it on essentially the same body of facts as he invokes in the federal court. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Jimenez, 458 F.3d at

149; <u>Volpe v. Downstate Correctional Facility</u>, No. 06 CV 6181, 2006 WL 3498580, at *1 (E.D.N.Y. Nov. 30, 2006).

Here, petitioner's state court brief makes no reference to federal constitutional principles. The brief cites exclusively to New York State court cases, and makes no reference whatsoever to any federal cases or to the federal constitution. Even if some of the state cases cited to federal cases, nothing in petitioner's brief alerted the appellate courts to the federal nature of petitioner's grand jury claim. <u>See</u> <u>Baldwin</u>, 541 U.S. at 29.

If a claim is not fairly presented to the state court, the habeas court will nonetheless deem it exhausted if there is "an absence of available State corrective process under § 2254(b)(1)(B)(i)" because "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001). When a petitioner "fail[s] to exhaust state remedies, 'and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." <u>Id.</u> (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991)).

Petitioner has already taken the one direct appeal to which he is entitled, and no longer has any procedure available in state court to raise this claim. Accordingly, this claim is procedurally barred from habeas corpus review. Where a habeas claim is deemed procedurally barred, a federal court will not entertain such a claim "absent a showing of cause and prejudice to excuse the default," or where the petitioner can show that he is "actually innocent of the underlying offense." <u>Dretke v. Haley</u>, 541 U.S. 386, 388 (2004) (citing <u>Murray v. Carrier</u>, 477 U.S. 478 (1986)). Here, petitioner does not demonstrate cause, prejudice or that a fundamental

12

miscarriage of justice would occur absent federal court review. Therefore, petitioner's grand jury claim should not be reached because it is unexhausted and procedurally barred.

Even if the claim were to be reviewed on the merits, it should be denied. Petitioner was convicted following a trial, therefore, any alleged deficiencies in the indicting grand jury's proceedings are not cognizable in a federal habeas corpus proceeding. See United States v. Mechanik, 475 U.S. 66, 70 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates a *fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."); Davis v. Mantello, 42 Fed. Appx. 488, 490-91 (2d Cir. 2002) (summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."), cert. denied, 538 U.S. 986 (2003); see also Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in federal court."); Archer v. Connell, No. 06 CV 2961, 2008 WL 434266, at *10 (E.D.N.Y. Feb. 14, 2008).

Here, petitioner argues that there were deficiencies in the grand jury proceeding. However, petitioner was found guilty by a petit jury. Therefore, his grand jury claim is not cognizable on federal habeas review and this claim should be denied.

C. Right to Counsel

1. Exhaustion

Petitioner alleges that his right to counsel was violated when after an attorney had been appointed on the Continental Services robbery case, IAB detectives questioned him on an

unrelated matter. Therefore, petitioner argues that the gun and his statements should have been suppressed. (Brief for defendant-appellant at 48). Respondent argues that this claim does not present a cognizable federal claim, is unexhausted and procedurally barred.

In March 1996, while petitioner was in custody on the Continental Services robbery case, he filed a complaint against Meehan. The complaint alleged that Meehan failed to investigate a double homicide about which petitioner had given him information, and that his failure to do so resulted in the death of two other people. T at 378-380. Petitioner was interviewed by two IAB detectives regarding the allegations he made against Meehan. During that interview, petitioner stated that he received a handgun from a friend of his that was used in the double homicide. T at 380. Petitioner further stated that the gun was kept at his girlfriend's house, and that he would tell his girlfriend to turn over the gun to the IAB detectives. The gun was tested, and was found not to have been used in the double homicide. T at 386.

More than a year later, Lynch, the Assistant District Attorney assigned to the Continental Services robbery case, contacted IAB to see if there was any Rosario material in the file. At that time, she learned that petitioner had surrendered a gun to the IAB detectives. Tests confirmed that the bullet recovered from the wall of the Continental Services office came from gun petitioner had surrendered a year earlier. T at 221, 247-249.

Respondent argues that petitioner failed to alert the state courts to the federal constitutional nature of this claim and that he no longer has a forum in which he could raise this claim now. This Court disagrees. In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526

U.S. at 845; see also Taveras v. Smith, 388 F.Supp.2d 256, 264 (S.D.N.Y. 2005) (a petitioner is required to present his constitutional claim "to each level of the state court system available to review the claim"). A petitioner must not only " 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review)," but must alert each court "to the federal nature of the claim." Baldwin, 541 U.S. at 29 (citing Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam), and O'Sullivan, 526 U.S. at 845).

A petitioner can alert a state court to the federal constitutional nature of his claim in various ways, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye v. Attorney General of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982); Martinez v. Brown, No. 05 CV 4464, 2007 WL 2402995, at *1 (E.D.N.Y. Aug. 17, 2007). Petitioner's appellate brief cites to both federal and state cases involving the legal standard for federal constitutional right to counsel. Accordingly, this Court deems this claim exhausted and reaches the merits of the claim.

Under New York law, once a defendant is represented by counsel on the charge for which he is in custody, "'custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease.'" People v. Burdo, 91 N.Y.2d 146, 149 (1997) (quoting People v. Steward, 88 N.Y.2d 496 (N.Y. 1996)). The Supreme Court has held that the right to assistance of counsel is "offense specific" and "attaches only to charged offenses." Texas v. Cobb, 532 U.S. 162, 164 (2001); Key v. Artuz, No. 99 CV 161, 2002 WL 31102627, at *4 (E.D.N.Y. Sept. 16, 2002). That is, while a defendant may have a Sixth

Amendment right to counsel in a case where the adversarial process has been initiated against him, that right does not attach to an unrelated case in which the adversarial process has not been initiated. Rivera v. Conway, 350 F.Supp.2d 536, 548 (S.D.N.Y. 2004). Accordingly, the New York right to counsel is broader than the federal right to counsel. Cf. Rivera v. Artus, No. 05 Cv 5050, 2007 WL 3124558, at *7 n. 7 (E.D.N.Y. Oct. 25, 2007) (citing Hill v. Senkowski, 409 F.Supp.2d 222, 232 (W.D.N.Y. 2006) (holding that, to the extent a state law claim is broader than a similar federal right, the state law claim is not cognizable on federal habeas review)); Hurd v. Stinson, No. 99 Civ. 2426, 2000 WL 567014, at *12 n.12 (S.D.N.Y. May 10, 2000).

Here, the IAB detectives interviewed petitioner at his request. The purpose of the interview was to determine the substance of petitioner's allegations against Meehan, not to elicit any information about the Continental Services robbery. T at 379. In fact, the IAB detective testified that he did not learn the reason petitioner was in custody until the day after he conducted his interview. T at 468-469. Moreover, petitioner volunteered the information about the gun, and once the detectives determined that the recovered gun was not used in the double homicide they took no further action. T at 380. The police were not interested in prosecuting petitioner for possession of the gun, as he relinquished it as part of the Internal Affairs investigation. More than a year later, when Lynch contacted the IAB detectives to ask about any potential Rosario material, they produced petitioner's gun to her. T at 462-466.

As respondent effectively argued: "by giving the detectives the gun in relation to two other cases, [petitioner] effectively distanced himself from it; and, just in case anyone caught on, he could argue that the gun--and the subsequent ballistics tests--were not admissible against him." (Brief for respondent at 34). Although the gun was ultimately used against him in the Continental Services robbery case, under the facts presented here, where plaintiff volunteered the

information and the gun to the IAB detectives, there was no Sixth Amendment violation of petitioner's right to counsel. Accordingly, the state court decision was not contrary to or an unreasonable application of clearly established Federal law and this claim should be denied.

D. The Trial Court's Exclusion of Testimony

Petitioner alleges that his due process right to present a defense was violated when the court precluded Detective McHugh ("McHugh") from testifying. Petitioner argues that although he served subpoenas on various witnesses, including McHugh,[7] no one appeared in response to the subpoenas. Petitioner further argues that since he was incarcerated and representing himself *pro se,* he could not determine McHugh's or his other witnesses whereabouts. (Brief for defendant-appellant at 55).

A federal court's habeas review is limited where petitioner claims that a state court's evidentiary ruling involved an error of constitutional magnitude. See Estelle, 502 U.S. at 67 (federal habeas corpus relief does not lie for errors of state law.). In determining whether the exclusion of evidence improperly infringed on a defendant's right to present a complete defense, reviewing courts analyze: (1) whether the trial court's evidentiary ruling was proper; and (2) whether the excluded evidence was material. See Wade v. Mantello, 333 F.3d 51, 58-59 (2d Cir. 2003). Erroneously excluded evidence only reaches a level of unfairness if it "creates a reasonable doubt that did not otherwise exist." Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 2000) (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)); see also Sims v. Stinson, 101 F.Supp.2d 187, 194 (S.D.N.Y. 2000) (for an evidentiary error to reach constitutional magnitude,

---

[7] Petitioner characterized McHugh as a "key witness to prove that the police had framed him..." (Brief for defendant-appellant at 54).

"it must have been 'crucial, critical, highly significant'" ') (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)). Therefore, a petitioner seeking habeas relief on the basis of an allegedly erroneous evidentiary ruling must establish that the trial court's error "deprived [him] of a fundamentally fair trial." Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)).

Moreover, a federal habeas court reviews the evidentiary error "objectively in light of the entire record before the jury." Collins, 755 F.2d at 19. Here, a review of the state court record reveals that the judge provided petitioner with ample opportunity to have his witnesses present in court. On June 25, 1998, the trial court instructed petitioner to be ready on June 29th to present his defense. (T at 766-67, 834-835, 838, 840). On June 29th, when petitioner was not ready to present any witnesses the judge granted an adjournment until the following morning. (T at 989-993). The following morning, petitioner presented the testimony of Bernice Sutton, the only one of eleven defense witnesses that was available to testify. (T at 994-98, 1029-1032).

According to petitioner's legal advisor, petitioner had served a subpoena requesting the presence of "Detective MacHuge." T at 1033-35. The legal advisor further stated that the Nassau County police department refused to accept that subpoena. Id. According to petitioner's legal advisor, no subpoenas were served on any of the other witnesses.

Although the trial record is unclear as to why the subpoena for McHugh was rejected, respondent asserts that petitioner had misspelled McHugh's name on the witness list and possibly on the subpoena itself. Therefore, the subpoena was rejected as it named "Detective MacHuge" instead of Detective McHugh. See Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 36, n. 5. The record reflects that the subpoena for McHugh was signed by the

18

court on June 10, 1998, and served on June 18, 1998. T at 1034-35. Prior to trial, petitioner made no further attempt to secure McHugh's appearance. Furthermore, although petitioner characterized McHugh as a "crucial" witness, necessary to prove that the police had framed him for the Continental Services robbery, this allegation is conclusory and is not supported by the record. T at 1035. McHugh arrested petitioner on an unrelated robbery, and thus was unlikely to have any material information about petitioner's involvement in this case. See Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 42.

The decision of whether to grant or deny a continuance is "a matter 'traditionally within the discretion of the trial judge.' " Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964) and citing Morris v. Slappy, 461 U.S. 1, 11 (1983)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." Morris, 461 U.S. at 12 (quoting Ungar, 376 U.S. at 589); accord Drake, 321 F.3d at 344; United States v. Arena, 180 F.3d 380, 397 (2d Cir. 1999) ("The denial of a defendant's request for a continuance will not be reversed absent a showing of both arbitrariness and of prejudice to the defendant.") (citations omitted).

Petitioner fails to demonstrate that the court's actions were arbitrary or that his defense was substantially impaired by the court's denial of his request for another adjournment. Petitioner makes no showing that a further adjournment would have enabled him to secure the attendance of any of his witnesses. Moreover, even if he could do so, he makes no showing that the testimony of any of these witnesses would have been exculpatory.

Finally, any evidentiary error is subject to the harmless error standard. The Supreme Court has clarified that, on habeas review, courts must analyze whether a constitutional error was

19

harmless by using the substantial and injurious effect standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). Fry v. Plier, 127 S.Ct. 2321, 2328 (2007). Under the Brecht standard, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.' " Fry, 127 S.Ct. at 2325 (quoting Brecht, 507 U.S. at 631). Here, it is clear that any evidentiary error did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, the state court decision was not contrary to or an unreasonable application of clearly established Federal law and this claim should be denied.

## CONCLUSION

Accordingly, it is recommended that the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that the Court certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636 (b)(1) and Rule 72 (b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. Any request for an extension of time in which to file objections must be made within the ten (10) day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: Brooklyn, New York
       November 5, 2008